IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PICKMEUP MEDICAL TRANSPORT, LLC,<br><br>　Plaintiff,<br><br><br><br><br>　　vs.<br><br><br>UTAH DEPARTMENT OF HEALTH, DIVISION OF HEALTHCARE FINANCING; UTAH DEPARTMENT OF ADMINISTRATIVE SERVICES, DIVISION OF STATE PURCHASING AND GENERAL SERVICES; and LOGISTICARE SOLUTIONS, LLC,<br><br>　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO STRIKE<br><br><br><br><br><br><br>Case No. 2:13-CV-846 TS |

This matter is before the Court on Plaintiff PickMeUp Medical Transport, LLC's Motion for Preliminary Injunction and Motion to Strike.[1]  The Court held oral argument on Plaintiff's Motions on November 25, 2013.  At that hearing, the Court informed the parties that it would

---

[1]Docket Nos. 13, 37.

1

deny Plaintiff's Motion for Preliminary Injunction and indicated that a reasoned ruling would issue shortly.  This Memorandum Decision constitutes the reasoned opinion of the Court.

## I.  BACKGROUND

Plaintiff is a Utah company with offices located throughout the State of Utah.  The Utah Department of Health, Division of Healthcare Financing ("Department of Health") and Utah Department of Administrative Services, Division of Purchasing and General Services ("Purchasing") (collectively the "State Defendants") are departments and divisions of the State of Utah.  Logisticare Solutions, LLC ("Logisticare") is a Delaware limited liability company headquartered in Atlanta, Georgia.

Plaintiff has provided non-emergency medical transportation ("NEMT") services to the Department of Health since 1998.  Plaintiff has been the exclusive contract provider of NEMT services to the Department of Health since July 2001.  The services Plaintiff provides are funded, at least in part, by Medicaid.  The program is administered by the State of Utah through the Department of Health.

Plaintiff's most recent contract with the Department of Health was set to expire on June 30, 2013.  Purchasing required that the NEMT contract be put out to public bid in advance of the new contracting period.  Thus, in January 2013, the Department of Health, in conjunction with Purchasing, issued a Request for Proposal ("RFP").  The RFP sought sealed proposals for NEMT services.  The methodology and process of the RFP were overseen by Purchasing.  All communications from potential bidders flowed through Purchasing.  Purchasing then forwarded any inquiries from potential bidders to the Department of Health in an anonymous format.

2

The RFP contained two categories of evaluation criteria: technical and cost.  These two parts of the RFP were addressed in two steps.  Part one was the technical evaluation and part two addressed cost.  Thus, to be eligible to bid on the cost portion of the RFP, bidders had to pass the technical evaluation.

An evaluation panel was formed to perform the technical evaluation.  At the close of the bidding period, Purchasing sent five bid proposals to the evaluation committee to review the technical competence of the bidders.  Panel members had the responsibility to review and independently score the five NEMT bids.

Scoring the bidders' technical competence was complicated by the fact that the bidders used differing business models.  Three of the bids were based on a brokerage model, meaning that the potential contractor would oversee receiving the transportation request and determining eligibility of the client to be transported and then would subcontract the actual transport.  Under the brokerage model, all of the transport services would be performed by subcontractors.  Two of the bids were based on the contractor being the direct owner of all segments of the service provided.  In this business model, subcontractors are allowed but the majority of the transportation is provided by the contractor.

After completing their review, the evaluation panel met with a representative from Purchasing to review the scores that the panel members had assigned.  The scoring was reviewed individually to determine the range of points assessed by each panel member and determine if there were any outlier scores.  The purpose of this review was to ensure that the scoring was appropriate.  During the technical scoring process, it was determined that the assigned

3

percentages for the points associated with the technical and cost score were off by between two and three percentage points.  After the technical scores were completed and evaluated, only two of the five proposals were deemed eligible to bid on step two, the cost for NEMT services.  The two successful bidders in the technical evaluation were Plaintiff and Logisticare.

The cost component of the RFP was evaluated and scored by Purchasing.  Purchasing handled the cost scoring so that the technical evaluators could perform their review without any considerations as to the cost of the bids.  It is for this reason that the RFP required that the cost proposals be separate from the technical aspects of the proposals.

Once the scores were added, Logisticare was determined to be the winning bid with a total score of 407.75 out of 420.  Plaintiff's bid was scored at 400.18 out of 420.  Logisticare is currently under contract with the State of Utah to commence NEMT services on January 1, 2014.

To facilitate the transition to operating under a pure brokerage contractor, the Department of Health is required to amend the State plan under which it operates its Medicaid services.  As part of that process, the Department of Health is required to give notice to all Medicaid clients that a change in the NEMT service provider will occur.  The Department of Health has begun this process and also sought a waiver to continue the current operations through January 1, 2014.

Plaintiff filed a protest and appealed the award of the contract to Logisticare.  Plaintiff took issue with the technical evaluation of Logisticare's bid.  According to Plaintiff, the Department of Health awarded points to Logisticare where, on the face of its response, Logisticare had not complied with the requirements of the RFP.  Specifically, Plaintiff alleged that Logisticare failed to provide required information for its subcontractors and failed to show it

4

had vehicles located throughout the State of Utah.  Plaintiff also alleged that the Department of Health committed mathematical errors in calculating the RFP criteria.

A protest hearing was promptly held in which the Chief Procurement Officer for the State of Utah, Kent D. Beers, took evidence and heard argument from Plaintiff, Logisticare, and the Department of Health.  Subsequently, Mr. Beers found that the award was appropriate and upheld the decision.  Mr. Beers found no evidence of bias or widely fluctuating scores and no evidence that the process was arbitrary or capricious.  Plaintiff appealed the protest ruling but failed to comply with the requirement that it post a bond.  Due to this failure, Plaintiff's appeal was dismissed.

Plaintiff then filed the instant suit in state court.  Defendants removed to federal court based on this Court's federal question jurisdiction.  In its Complaint, Plaintiff brings the following causes of action: (1) breach of contract, (2) breach of statutory duty, (3) class-of-one denial of equal protection, (4) denial of procedural due process under the Utah Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, (5) denial of substantive due process under the Utah Constitution and the Fifth Amendment of the United States Constitution actionable under 42 U.S.C. § 1983, and (6) a claim for attorneys' fees under 42 U.S.C. § 1988.

## II.  DISCUSSION

### A.    MOTION TO STRIKE

Plaintiff moves to strike portions of various affidavits submitted by the State Defendants in support of their Opposition.  Plaintiff bases its Motion to Strike on failures to comply with the

Federal Rules of Evidence that Plaintiff asserts render the affidavits inadmissible.  Federal Rule

of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense

or any redundant, immaterial, impertinent, or scandalous matter."[2]  However, DUCivR 7-

1(b)(1)(B) states that "[m]otions to strike evidence as inadmissible are no longer appropriate and

should not be filed."[3]  Rather, "[t]he proper procedure is to make an objection."[4]  Plaintiff's

Motion to Strike is prohibited by DUCivR 7-1(b)(1)(B) and may be denied on that basis alone.

That being said, in reaching its decision on Plaintiff's Motion for Preliminary Injunction the

Court does not rely on any of the evidence objected to, therefore the Court will deny Plaintiff's

Motion as moot.

B.      PRELIMINARY INJUNCTION

        Plaintiff moves for a preliminary injunction requiring the Department of Health to

continue the contract for NEMT services currently in effect between the Department of Health

and Plaintiff until such time as the Department of Health conducts a second RFP process or this

case is resolved on the merits.  Defendants contend that injunctive relief is not merited because

Plaintiff cannot show that it held a constitutionally protected property interest in the prospective

award of the NEMT contract and, even if such a right were recognized, the State Defendants did

not abuse their discretion in evaluating and scoring Plaintiff's and Logisticare's bid proposals.

---

[2]Fed. R. Civ. P. 12(f).

[3]DUCivR 7-1(b)(1)(B).

[4]*Id.*

To be entitled to a preliminary injunction, Plaintiff must show (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.[5]  "A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."[6] Because it is an extraordinary remedy, "the right to relief must be clear and unequivocal."[7]

1.      LIKELIHOOD OF SUCCESS

Plaintiff proposes that a relaxed standard of likelihood of success be applied in this case. Plaintiff cites to *Atchison, Topeka & Santa Fe Railway Co. v. Lennen*,[8] for the proposition that "[i]t is only necessary that plaintiffs establish a reasonable probability of success, and not an 'overwhelming' likelihood of success, in order for a preliminary injunction to issue."[9]  *Lennen* involved the application of a statute that expressly provided for injunctive relief.  Plaintiff has not alleged that injunctive relief is statutorily prescribed in this case.  In considering a similar request

---

[5]*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

[6]*GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

[7]*Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006).

[8]640 F.2d 255 (10th Cir. 1981).

[9]*Id*. at 261; Docket No. 13, at 9.

for injunctive relief, the United States Supreme Court instructed that "a major departure from the long tradition of equity practice should not be lightly implied."[10]

Plaintiff also cites *Seneca Cayuga Tribe v. Oklahoma*[11] for the proposition that "where the movant has met the other elements, the plaintiff need only establish a 'fair ground for litigation' for an injunction to issue."[12] Because the Court finds that Plaintiff cannot meet its burden as to the remaining elements, the Court declines to apply the "fair ground for litigation standard" advocated by Plaintiff.

In short, the Court will apply the traditional test and require that Plaintiff show a substantial likelihood on the success of the merits of its claims.[13]

Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983. "In order to state a cause of action under section 1983, a plaintiff must allege both the deprivation of a federal right and that the alleged action was taken under color of state law."[14] The parties do not dispute that

---

[10]*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982); *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) (holding that nothing in the Patent Act provides for a departure from the traditional four-factor test applied by courts of equity in determining whether to grant injunctive relief).

[11]874 F.2d 709 (10th Cir. 1989).

[12]Docket No. 13, at 9 (quoting *Seneca*, 874 F.2d at 716).

[13]The parties have limited their arguments to Plaintiff's procedural due process claim. Given this focus, the Court will do the same.

[14]*Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 857 (10th Cir. 1991) (citing *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir. 1991)).

the State Defendants acted under color of state law.  Thus, this issue turns on whether Plaintiff

was deprived of a federal right when Logisticare was awarded the NEMT contract.

"The requirements of procedural due process apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property."[15]  The

Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property,

without due process of law."[16]  Thus, to maintain its procedural due process cause of action under

§ 1983, Plaintiff "must first allege a property interest sufficient to warrant due process

protection."[17]  The Tenth Circuit has instructed that

> [a] property interest protected by the due process clause results from a legitimate
> claim of entitlement created and defined "by existing rules or understandings that
> stem from an independent source such as state law."  When analyzing whether a
> plaintiff presents a legitimate claim of entitlement, we focus on the degree of
> discretion given the decisionmaker and not on the probability of the decision's
> favorable outcome.[18]

"There is significant disagreement in the federal courts on the question whether an

unsuccessful bidder on a state contract possesses a constitutionally protected property interest."[19]

The majority of federal courts that have considered this issue have held "that a disappointed

bidder generally does not possess a property interest when the contract is not actually awarded to

---

[15]*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).

[16]U.S. Const. amend. XIV, § 1.

[17]*Jacobs*, 927 F.2d at 1115 (citing *Curtis Ambulance, Inc. v. Bd. of Cnty. Comm'rs*, 811
F.2d 1371, 1375 (10th Cir. 1987)).

[18]*Id.* at 1116 (quoting *Roth*, 408 U.S. at 577).

[19]*Buckley*, 933 F.2d at 857 (citing *Curtis*, 811 F.2d at 1376).

him."[20]  A minority of courts, on the other hand, have "recognized the potential for a property

interest 'of relatively narrow dimension.'"[21]  The Tenth Circuit "has not expressly embraced

either position."[22]  Rather, the Tenth Circuit has avoided an outright adoption of either approach

by finding that no property interest would be recognized even were the minority approach

adopted.[23]

Thus, under the majority rule, Plaintiff does not posses a recognizable property interest

for purposes of the due process analysis.  However, in line with the cases cited above, the Court

---

[20]*Id.* (citing *Sowell's Meats & Servs., Inc. v. McSwain*, 788 F.2d 226, 228 (4th Cir. 1986); *Coyne-Delany Co. v. Capital Dev. Bd.*, 616 F.2d 341, 343 (7th Cir. 1980)).

[21]*Id.* (citing *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F. Supp. 1118, 1131 (W.D. Pa. 1980); *L & H Sanitation, Inc. v. Lake City Sanitation, Inc*., 769 F.2d 517, 524 (8th Cir. 1985)).

[22]*Id.*

[23]*See S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1265–66 (10th Cir. 1998) (holding that "when the City sought competitive bids for the waste disposal contract, it did not thereby create a protected property interest or a 'legitimate claim of entitlement' in the bidders" and "[e]ven if  this court recognized a property interest in an unsuccessful bid, Southern Disposal fails to demonstrate any 'mutual explicit understanding' giving rise to such an interest"); *Buckley*, 933 F.2d at 857–58 (recognizing that a majority of federal courts hold "that a disappointed bidder generally does not possess a property interest when the contract is not actually awarded to him," yet nevertheless applying Oklahoma law to determine whether disappointed low bidder held a property interest); *Curtis*, 811 F.2d at 1377–84 (holding that "even were we to embrace the rationale of [the minority approach] and acknowledge the possibility that, in certain circumstances, a disappointed bidder for a government contract can have a constitutionally protected, albeit narrow, property interest, Curtis has failed to demonstrate that any provisions of state law or any 'mutually explicit understandings' gave rise to such a property interest in this case").

will take the added cautionary step of determining whether "provisions of state law or any 'mutually explicit understandings' give rise to such a property interest in this case."[24]

As stated above, the Court looks to state law and its "focus [is] on the degree of discretion given the decisionmaker."[25]  The state statute at issue is the 2012 version of the Utah Procurement Code.  The Court would note that, as the parties stated in oral argument, the 2013 version of the Utah Procurement Code is insightful in demonstrating the legislature's intentions in drafting the procurement code.

Plaintiff relies on § 63G-6-408 of the Procurement Code for the proposition that the State lacks discretion in awarding the contract.  That code section provides that the "[a]ward shall be made to the responsible offeror whose proposal is determined in writing to be the most advantageous to the state, taking into consideration price and the evaluation factors set forth in the request for proposals."[26]  That section further states that "[n]o other factors or criteria shall be used in the evaluation."[27]  According to Plaintiff, this provision deprives the State of discretion because it limits the State's evaluation of an offeror's advantages.  Plaintiff's contention is that this language requires the State to only rely on price and the evaluation factors set out in the RFP. Such an interpretation would make the terms "responsible offeror" and "most advantageous to the state" superfluous and without meaning.

---

[24]*Curtis*, 811 F.2d at 1377.

[25]*Jacobs*, 927 F.2d at 1116 (quoting *Roth*, 408 U.S. at 577).

[26]Utah Code Ann. § 63G-6-408(6)(a) (2012).

[27]*Id.* § 63G-6-408(6)(b).

11

Plaintiff's argument also fails to account for the discretion given the State within this and other provisions of the Utah Procurement Code. Section 63G-6-408 gives the State discretion to award the contract to the "responsible offeror whose proposal is determined . . . to be the most advantageous to the state."[28] In *Buckley Construction, Inc. v. Shawnee Civic & Cultural Development Authority*, the Tenth Circuit considered a state statute with similar language and reasoned that "'lowest responsible bidder' encompasses a variety of factors which combine to allow the [State] to choose the contractor who is best able to carry out the requirements of the contract."[29]

Further, the contemplated process set out by the Procurement Code grants the State substantial discretion in selecting the contractor that is most advantageous to the State. For example, while the Procurement Code contains criteria that the evaluation committee must consider, the code allows the evaluation committee broad discretion in evaluating and scoring the proposals.[30] Indeed, the very purpose of establishing an independent evaluation committee made up of professionals in the industry is to exercise discretion in evaluating the technical ability of the potential contractors. The 2013 version of the Procurement Code, at § 63G-6a-707(8), makes clear that the "evaluation committee shall award scores to each *responsive* and *responsible*

---

[28]*Id.* § 63G-6-408(6)(a).

[29]*Buckley*, 933 F.2d at 858–59.

[30]*See* Utah Code Ann. § 63G-6a-707 (2013).

proposal."[31]  This language demonstrates the clear intent of the legislature to give additional discretion to the evaluation committee and the State in selecting potential contractors.

The Procurement Code also contains provisions that grant the state agency discretion to reject any or all bids, in whole or in part, when it is in the best interest of the agency and the state.[32]  Similar statutory clauses have been found to be indicative of a discretionary bidding scheme not giving rise to a recognizable property interest.[33]

A review of the language of the specific RFP issued in this case also demonstrates the discretion granted to the State in selecting a potential contractor.  Attachment "B" to the RFP states: "A cost benefit analysis may be required.  If the State cannot justify awarding to the highest scoring proposal, due to higher costs, the State reserves the right to reject the proposal and award to the next highest scoring proposal or with a reasonable cost."[34]  Thus, even if a bidder received the highest score, the State nevertheless retained discretion under the RFP to reject a high scoring proposal in favor of a lower scoring, but more cost efficient, proposal.

---

[31]*Id.* § 63G-6a-707(8) (emphasis added).

[32]*Id.* § 63G-6a-902.

[33]*Cedar Bay Constr., Inc. v. City of Fremont*, 552 N.E.2d 202, 205 (Ohio 1990) ("[W]hen the statute provides for the acceptance of the lowest and best bid the city is not limited to an acceptance of merely the lowest dollar bid . . . [rather, the statute] places in the hands of the city authorities the discretion of determining who under all of the circumstances is the lowest and best bidder.").

[34]Docket No. 14-2, at 43.

In light of the foregoing provisions of the Utah Procurement Code, the specific language of the RFP at issue, and a review of the applicable Utah Procurement Code in its entirety, the Court finds that the RFP process grants the State substantial discretion in selecting a contractor.

The Court also notes that relevant case law from this jurisdiction supports the conclusion that Utah courts would not recognize a property interest for unsuccessful bidders such as Plaintiff.  In *Rapp v. Salt Lake City*,[35] the Utah Supreme Court considered whether an unsuccessful bidder on a public works project was entitled to contractual damages.  The court found that "[a]n ordinary advertisement for a bid is not itself an offer, rather the bid or the tender is an offer which creates no right until accepted."[36]  Accordingly, the *Rapp* court held that the unsuccessful bidder in that case was not entitled to recover damages under either express or implied contractual theories.

Similarly, in *Ralph L. Wadsworth Construction Co., Inc. v. Salt Lake County*,[37] the Utah Court of Appeals considered "whether a contractor who is the apparent low bidder on a public works contract is entitled to recover damages for lost profits for wrongful rejection of its bid."[38] The court "adopt[ed] the majority approach and h[e]ld that damages for lost profits are not

---

[35]527 P.2d 651 (Utah 1974).

[36]*Id*. at 654.

[37]818 P.2d 600 (Utah Ct. App. 1991).

[38]*Id.* at 602.

14

recoverable under negligence theory as a matter of Utah common law."[39]   The court provided the

following reasoning in support of its adoption of the majority rule:

> The rationale for our holding is that the laws governing competitive bidding are
> enacted for the benefit of the general taxpaying public and not individual bidders.
> A violation of those laws, therefore, is a breach of a duty owed to the public and
> not to an individual.  Because damages benefit only the interest of an individual
> bidder, an award of damages for lost profits in such instances is contrary to the
> very public interest that the competitive bidding laws were designed to protect.  In
> addition, damages for lost profits further burden the public coffers already
> penalized by paying a higher price for goods or services.[40]

While neither of these cases directly addressed the RFP process set out by the Utah

Procurement Code,[41] the reasoning and holding of each demonstrate a hesitancy on the part of

Utah courts to allow recovery for an unsuccessful bidder.  The same rationales identified by each

are directly applicable in this case.

In light of the foregoing analysis, the Court finds that Plaintiff cannot meet its burden to

prove a substantial likelihood of success on the merits of its claims because Plaintiff has not

alleged a property interest sufficient to warrant due process protection.

2.      REMAINING ELEMENTS

Many of Plaintiff's arguments on the remaining elements are premised on Plaintiff's

assertion that its due process rights have been violated.  First, Plaintiff asserts that "[w]here there

has been a violation of a constitutional right, most courts hold that no further showing of

---

[39]*Id.*

[40]*Id.* (internal citations omitted).

[41]*See id.* at 602 n.4.

irreparable injury is necessary."[42]  Because the Court finds that Plaintiff has not met its burden of likelihood to prevail on its constitutional claims, this argument fails.  Further, while Plaintiff has submitted evidence that absent injunctive relief it will likely be put out of business, the Court is not persuaded that Plaintiff cannot be adequately compensated for such loss through money damages.[43]

Similarly, Plaintiff's argument as to the public interests at issue turns on the success of its claims.  Plaintiff argues that its right to a fair bidding process easily outweighs any administrative inconvenience to the State Defendants and that the public has an interest in ensuring that Medicaid recipients are provided NEMT benefits.  "[I]n every case such as this where injunctive relief is sought a court must balance the public interest in having a government procurement process which can be administered without disruptive court-ordered restraints against the interests of the party seeking the injunction."[44]  If Plaintiff were likely to prevail on its claims, the policy concerns would weigh in its favor.  However, because the Court finds that Plaintiff is not substantially likely to prevail on its claims, the Court finds that the public interest favors allowing the procurement process to go forward.

---

[42]Docket No. 13, at 14 (internal quotation marks and citations omitted).

[43]*See Dennis v. Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("It is . . . well-established that an injury is irreparable only if it cannot be undone through monetary remedies." (internal quotation marks and citation omitted)).

[44]*Cincinnati Elecs. Corp. v. Kleppe*, 509 F.2d 1080, 1089 (6th Cir. 1975).

As to the balance of harms, Plaintiff argues that the balance of harms tips in its favor because the State of Utah will not be harmed by an injunction maintaining the status quo because Plaintiff will continue to provide NEMT services.  Plaintiff further argues that, on the other hand, if the injunction is not issued it will suffer extreme harm because it will miss out on several million dollars in business opportunity and profits and will lose goodwill and reputation in the community.  Plaintiff's argument fails to account for the financial harms that others will suffer in the event an injunction is issued.  Plaintiff will earn its profits at the expense of the State of Utah and Logisticare.  It necessarily follows that an injunction awarding Plaintiff the continued benefit of the contract deprives Logisticare of the same contract.  Further, the State Defendants will be forced to continue to pay the higher price charged by Plaintiff.  The State Defendants have provided evidence that this will result in an added cost to the State of over $12,000 a month.

3.      SUMMATION

In light of the foregoing analysis, the Court finds that Plaintiff has failed to meets its burden to show a substantial likelihood of success on the merits of its claims or that it could meet the remaining elements relevant to this Court's determination of whether injunctive relief is warranted in this case.  Thus, in accordance with this Court's oral ruling, Plaintiff's Motion for Preliminary Injunction will be denied.

III.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Plaintiff's Motion to Strike (Docket No. 37) is DENIED AS MOOT.  It is further

17

ORDERED that Plaintiff's Motion for Preliminary Injunction (Docket No. 13) is DENIED.

DATED   November 26, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge